SANDERS v. TURN KEY HEALTH CLINICS
2025 OK 19
Case Number: 121589
Decided: 03/11/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 19, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

PHILIP SANDERS, an Individual and Husband and Next of Kin of BRENDA JEAN SANDERS and Personal Representative of the Estate of BRENDA JEAN SANDERS, Deceased, Plaintiff/Appellant,
v.
TURN KEY HEALTH CLINICS, a limited liability company, Defendant/Appellee.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION III

¶0 Plaintiff filed a petition in the District Court for Creek County and alleged a wrongful death caused by defendant. Defendant filed a motion to dismiss the petition and the Honorable Douglas W. Golden, District Judge, granted defendant's motion to dismiss and also granted leave for plaintiff to amend the petition. Plaintiff did not amend and appealed the trial court's order granting dismissal and leave to amend. The Court of Civil Appeals reversed the District Court, released its opinion for publication, and defendant filed a petition for certiorari to review the appellate court. We granted certiorari. We hold: Plaintiff appealed an interlocutory order, created a premature appeal, and appellate jurisdiction is absent; The Court vacates the opinion by the Court of Civil Appeals and withdraws it from publication; The Court recasts plaintiff's petition in error to an application to assume original jurisdiction and petition for prohibition; The Governmental Tort Claims Act makes licensed medical professionals to be employees of this state, regardless of the place in this state where duties as employees are performed, when the licensed medical professionals are under contract, including when under contract as an independent contractor, with city, county, or state entities and providing medical care to inmates or detainees in the custody or control of law enforcement agencies; The Court assumes original jurisdiction and denies the petition for writ of prohibition.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS
VACATED AND WITHDRAWN FROM PUBLICATION; APPEAL RECAST;ORIGINAL
JURISDICTION ASSUMED; PETITION FOR WRIT OF PROHIBITION DENIED

Charles L. Richardson, Colton L. Richardson, Richardson Richardson Boudreaux, Tulsa, Oklahoma, for Plaintiffs/Appellants.

Sean P. Snider, Anthony C. Winter, Johnson Hanan Vosler Hawthorne & Snider, Oklahoma City, Oklahoma, for Defendant/Appellee.

EDMONDSON, J.

¶1 We conclude The Governmental Tort Claims Act makes licensed medical professionals to be "employees" of this state, regardless of the place in this state where duties as employees are performed, when the licensed medical professionals are under contract, including when under contract as an independent contractor, with city, county, or state entities and providing medical care to inmates or detainees in the custody or control of law enforcement agencies.

I. Trial Court Proceedings

¶2 Plaintiff Sanders, filed a petition in the District Court and alleged the defendant, Turn Key Health Clinics, LLC, (Turn Key) caused the wrongful death of Sanders' wife as a result of her confinement in the Creek County Jail. He alleged Brenda Jean Sanders was booked into the Creek County Justice Center on October 17, 2016, at 10:33 p.m., and her health deteriorated during her four weeks of custody. Brenda Sanders was transported from the jail to a hospital on November 20, 2016, where she was diagnosed with "severe sepsis with shock, acute hypoxic respiratory failure, acute kidney injury, hepatopathy, coagulopathy, anemia, and thrombocytopenia." She died on November 21, 2016.

¶3 Turn Key filed a motion to dismiss Sanders' petition. Turn Key argued Sanders "failed to state a claim upon relief can be granted," because Turn Key was "immune from liability under the Oklahoma Governmental Tort Claims Act." The District Court granted the motion to dismiss and the court's order also stated plaintiff was granted thirty days to file an amended petition.

¶4 Sanders appealed the trial court's order. The Court of Civil Appeals reversed the order of the trial court, with one judge dissenting, and released its opinion for publication. Turn Key petitioned this Court for certiorari to review the opinion by the Court of Civil Appeals. This Court previously granted certiorari.

II. Appellant's Petition in Error Challenging an Interlocutory Order

¶5 This Court inquires into its own jurisdiction in every proceeding before the Court. 

¶6 Turn Key's motion to dismiss the petition cited 12 O.S. §2012

G. FINAL DISMISSAL ON FAILURE TO AMEND. On granting a motion to dismiss a claim for relief, the court shall grant leave to amend if the defect can be remedied and shall specify the time within which an amended pleading shall be filed. If the amended pleading is not filed within the time allowed, final judgment of dismissal with prejudice shall be entered on motion except in cases of excusable neglect. In such cases amendment shall be made by the party in default within a time specified by the court for filing an amended pleading. Within the time allowed by the court for filing an amended pleading, a plaintiff may voluntarily dismiss the action without prejudice.

12 O.S. §2012

¶7 In Brown v. Founders Bank and Trust Co., 1994 OK 130890 P.2d 85512 O.S. §201212 O.S. §2012Brown filed an amended petition after the time the trial court had allowed. The trial court later memorialized its decision granting the motion to dismiss. The controversy on appeal included an appellate adjudication to determine when the plaintiff could appeal the trial court's dismissal.

¶8 We explained in Brown the order granting dismissal with leave to amend was an interlocutory order and not immediately appealable.

When the trial court granted Founders' initial motion to dismiss with leave to amend, Brown could not have appealed on the merits of his claim. Such an order is interlocutory; it is not a final judgment. The order may ripen into a final judgment upon the motion of an adverse party if the pleading is not amended within the time set by the trial court. A motion to dismiss for failure to state a claim upon which relief can be granted may not be sustained unless it appears without doubt that the plaintiff can prove no set of facts in support of the claim entitling relief.

Brown, 1994 OK 130Frazier v. Bryan Memorial Hospital Authority, 1989 OK 73775 P.2d 281Frazier and in the context of the former Political Subdivision Tort Claims Act, 12 O.S. §2012Frazier, 775 P.2d at 284 (section title in original). Brown states an order granting dismissal and leave to amend "may ripen" into a final judgment "upon motion by an adverse party." Brown, 1994 OK 130

¶10 Our appellate jurisdiction is usually based upon constitutional or statutory authority, or a combination of these two, with the authority stating a judicial act in a particular type of matter or a particular type of judicial act, e.g., final order, judgment, etc., may be reviewed by an appeal when brought pursuant to constitutional and legislative requirements. 

¶11 The appellate record before the Court lacks a memorial of an appealable trial court judgment entered and filed in the trial court after Sanders failed to amend his petition. The truncated appellate record12 O.S. §2012Brown, 

¶12 A premature appeal from a District Court may continue if appellant files a timely supplemental petition in error. Id. No supplemental petition has been filed by Sanders.

¶13 Nothing in the record suggests a judgment actually filed in the trial court. A filed judgment is missing from the appellate record. Such error has been remedied by appellant filing the judgment after direction by the appellate court. If appellant "neglected to make the record so show, after the court's order so directing, the appellate court may then justifiably dismiss the appeal." a "sine qua non of appellate review" rather than a jurisdictional prerequisite to the commencement of an appeal. filing with the court clerk of a written judgment, decree or appealable order, prepared in conformance with Section 696.3 of this title and signed by the court, shall be a jurisdictional prerequisite to the commencement of an appeal." 12 O.S. 2021, §696.212 O.S.2021, §696.312 O.S. §696.312 O.S. §990A

¶14 The trial court granted Sanders thirty days to amend the petition. No amendment was filed within the thirty-day period. Sanders' appellate record presents the Court with the jurisdictional issue whether an interlocutory nonappealable order could ripen into an appealable order by the mere expiration of the time to amend a petition as specified in a trial court's dismissal order.

¶15 Sanders' request for the exercise of appellate jurisdiction on the record before us would require the Court to create an exception for the §2012(G) procedure not found in that statute, or redefining what constitutes a judgment, or holding an "interlocutory order" may ripen into a judgment during an appeal. The statute, 12 O.S. §2012

¶16 When the legislature has spoken and addressed an issue using plain, clear, unambiguous language within the sphere of the legislature's authority, then this Court applies the language without needing to apply rules of statutory construction. Oglesby v. Liberty Mutual Insurance Company, 1992 OK 61832 P.2d 83412 O.S. §2012

¶17 Of course, the mere passage of time after a dismissal may prevent an effective amendment in a particular circumstance, such as when an applicable statute of limitations is raised and its application makes an amendment untimely. 

III. No Briefing on Recasting Procedure and Lack of Prejudice

¶18 During our certiorari review we have not required Sanders to return to the trial court to obtain a "final judgment of dismissal" as described in 12 O.S. §2012sua sponte the parties are given a reasonable opportunity to present facts and law on the issue prior to the court's decision adjudicating the sua sponte issue, and one example is a court's sua sponte inquiry into its jurisdiction. 

¶19 In summary, reasonable expectations by appellate parties before this Court include this Court's use of recasting requests for relief with the Court's typical analysis. For example, these expectations include, but are not limited to: (1) The Court's history of recasting a petition in error to a petition for extraordinary relief in proper circumstances, i.e., changing a request for appellate jurisdiction to one for original jurisdiction; and (2) The Court making an assessment whether recasting has a potential for prejudicing the parties' legal claims and defenses, the necessity for notice to parties and an opportunity to brief issues, and the necessity of an additional record conforming to an exercise of either appellate or supervisory writ jurisdiction.

¶20 More than thirty years ago we explained: "This court on occasion, and when justice so requires, will treat a petition in error as an original action for a writ, or vice versa." 

¶21 Our analysis of a judicial procedure includes issues relating to notice, a party's opportunity to be heard, and whether a party suffers legally cognizable prejudice as a result of the procedure used. 

¶22 Our analysis whether prejudice could be present by recasting without notice also includes consideration of the Court's writ review upon recasting compared to the Court's review by appellate jurisdiction. An appellate adjudication of a 12 O.S. §201212 O.S. §2012

¶23 Additionally, Turn Key's 12 O.S. §2012de novo without deference to the trial court's decision. de novo standards of review create no prejudice when applied in a recast supervisory writ proceeding because the same standards of review are applied in an appellate proceeding reviewing the sufficiency of Sanders' trial court petition. We also note that enforcement of our opinion by a supervisory writ in the trial court is conceptually similar, although not identical, to enforcement of an appellate opinion.

¶24 Sanders' appeal was brought pursuant to Rule 1.36, Okla.Sup.Ct.R. which provides for the trial court filings to serve as the appellate briefs. The parties had an opportunity to brief the issues raised by the §2012(B)(6) motion and these issues are also raised by the petition for certiorari.

¶25 We conclude Sanders' petition in error may be recast to a supervisory writ proceeding without notice to the parties if Sanders' appellate assignments of error and the issues on certiorari are proper for assuming supervisory original jurisdiction with an associated petition for a supervisory writ.

IV. Appellant's Petition in Error Recast as an Application to Assume
Original Jurisdiction and Petition for Writ of Prohibition

¶26 Final and interlocutory trial court orders in a cause of action as well as administrative orders by an administrative body or a trial court may be subject to review by the Court's extraordinary supervisory writs and superintending writs in proper circumstances. Sanders' dismissal order is not "final" because it is not a "final judgment of dismissal with prejudice." Extraordinary review of an order lacking finality due to the absence of a dismissal order is rare, but within this Court's authority. For example, the Court has assumed original jurisdiction and adjudicated an issue of law, e.g., a constitutional question, "in the instance where a ruling upon a demurrer was not final for lack of a dismissal order." 

¶27 Further, the Court may grant affirmative relief in the nature of extraordinary supervisory relief when appellate jurisdiction is absent. The Court may recast a petition in error as a request for original jurisdiction relief in certain circumstances including, but not limited to, when the specific legal issue to be adjudicated is one of first impression, the legal issue may be characterized as within a class of issues or claims historically recognized by this Court as proper for extraordinary relief, and the remedial scope of extraordinary writs issued by the Court includes the specific claim or issue before the Court. 

¶28 The Court examines whether circumstances in support of assuming original jurisdiction are present as part of the controversy, for example, clarifying a new statute or a new legal procedure, publici juris issue is presented. 

¶29 Turn Key's motion to dismiss included seventeen attached exhibits. The exhibits include several orders from the United States District Courts for both the Eastern and Western Districts of Oklahoma, as well as orders from the District Court of Oklahoma County and District Court of Creek County. The federal courts state reasoning based upon their predictions how the Oklahoma Supreme Court would rule on an issue of Oklahoma law. These courts cite language in Barrios v. Haskell County Public Facilities Authority, 2018 OK 90432 P.3d 233

¶30 The Governmental Tort Claims Act on the subject of a legal immunity and immunity in other particular circumstances has been adjudicated by this Court in supervisory writ proceedings where first impression issues of law are presented with an urgent need for adjudication. The record before us shows a public need for a prompt resolution of the GTCA immunity issue in this controversy.

¶31 Public policy in support of enforcing a 12 O.S. §201212 O.S. §201212 O.S. §2012

¶32 Our analysis includes considering adequacy of remedies alternative to supervisory writs, because a public interest is not sufficient, by itself, to make an alternative remedy inadequate for the purpose of recasting a petition in error. 

¶33 Not every statute is an expression of a fundamental public policy concern, 12 O.S. §2012sua sponte recasting of this controversy.

¶34 We recast Sanders' petition in error to an application to assume original jurisdiction and a petition to issue a writ of prohibition to prevent enforcement of the trial court's dismissal order. The scope of our original jurisdiction review includes all filings in the appellate controversy and the specific claims made and preserved by the parties. We assume original jurisdiction and deny the petition for a writ of prohibition.

V. The Oklahoma Governmental Tort Claims Act and Issue Raised by Parties

¶35 Turn Key, LLC, was a healthcare contractor with its employees providing healthcare to inmates in the Creek County Detention Center. Plaintiff argues that Turn Key is liable for its own negligence and that of its employees relating to the healthcare Turn Key provides to inmates. Turn Key argues it is immune from liability based upon 51 O.S.Supp.2014, §152

¶36 In Sullins v. American Medical Response of Oklahoma, Inc., 2001 OK 2023 P.3d 259Sullins, AMR, was a private corporation that contracted with a public trust, Emergency Medical Services (EMS), with AMR providing dispatching and field operations for EMS. We were required to construe statutory language and adjudicate whether AMR was an "entity designated to act in behalf of the state or a political subdivision." Id. at ¶17, 23 P.3d at 263.

¶37 We observed that an "agency" in 51 O.S. §152i.e. "entities through which the state or a political subdivision acts in the administration of government." Id. at ¶19, 23 P.3d at 263-64. We stated: "A private entity such as AMR is not an 'entity designated to act in behalf of the state or a political subdivision' merely because it contracts with a public trust to provide services which the public trust is authorized to provide." Id. at ¶20, 23 P.3d at 264. We noted factors supporting this conclusion, and also noted the GTCA "expressly excludes 'independent contractors' or 'an employee of independent contractors' from the definition of 'employee,' indicating that the Legislature intended to exclude public contractors from the immunity provisions of the GTCA." Id. at ¶¶20-22, 23 P.3d at 264. We observed: "51 O.S.Supp.2000, § 152Id. at n. 29, 23 P.3d at 264.

¶38 Beginning in 2007 section 152 of the GTCA stated an "employee" includes licensed medical professionals under contract with city, county, or state entities and providing medical care to inmates or detainees in the custody or control of law enforcement agencies. Sanders' petition alleged injury caused by Turn Key occurred between October 17, 2016, and November 20, 2016. The 2014 version of 51 O.S. §152

Section 152. As used in The Governmental Tort Claims Act:
...7. "Employee" means any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis.

a. Employee also includes:
(1) all elected or appointed officers, members of governing bodies and other persons designated to act for an agency or political subdivision, but the term does not mean a person or other legal entity while acting in the capacity of an independent contractor or an employee of an independent contractor, . . .
b. For the purpose of The Governmental Tort Claims Act, the following are employees of this state, regardless of the place in this state where duties as employees are performed: . . .

(7) licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies, and

51 O.S.Supp.2014, §15251 O.S. §15251 O.S. §15251 O.S. §152

¶39 In Barrios v. Haskell County Public Facilities Authority, 2018 OK 90432 P.3d 233Id. 2018 OK 90

Generally speaking, the staff of a healthcare contractor at a jail are "employees" who are entitled to tort immunity under the GTCA by virtue of sections 152(7)(b), 153(A), and 155(25). See 51 O.S.Supp.2015 § 152id. §§ 153(A), 155(25). We have not been asked whether Turn Key Health, LLC or its staff are "employees" under section 152(7)(b), but have assumed they are for purposes of answering the questions certified to us.

2018 OK 9051 O.S. §152

VI. The Oklahoma Governmental Tort Claims Act

¶40 Governmental sovereign tort immunity of a political subdivision is waived only to the extent and in the manner provided in the GTCA. Tort liability is imposed and sovereign immunity retained based upon various criteria in the Act. One general criterion is the actor's status as an "employee" of the public entity. This criterion is often combined with other criteria focusing on the alleged wrongful act being within the scope of the employee's employment and distinguishing causes of action for the purposes of the Act based upon a degree of tort culpability. The nature of the alleged wrongful act is also used in 51 O.S.Supp.2022, § 155

¶41 The present controversy involves the nature of the alleged wrongful conduct as well as the status criterion of who is an "employee" for the purposes of the GTCA. In Barrios, supra, we stated "Generally, speaking the staff of a healthcare contractor at a jail are "employees" who are entitled to tort immunity under the GTCA by virtue of sections 152(7)(b), 153(A), and 155(25). 

7. b. For the purpose of The Governmental Tort Claims Act, the following are employees of this state, regardless of the place in this state where duties as employees are performed

. . . (7) licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies,

This language unequivocally states the status of an "employee" occurs when the nature of the act is a (1) licensed medical professional, (2) under contract with a city county or state entity, (3) providing medical care, (4) to inmates or detainees in the custody or law enforcement agencies.

¶42 Sanders' petition states that: "Turn Key employees were contracted by Creek County as agents working in the Creek County Jail to provide medical care to inmates." 

¶43 Sanders states a limited liability company is not a licensed medical professional. Sanders argues he has brought an action against a limited liability company and not employees or agents of the limited liability company.

¶44 We agree with Sanders' assertion that the GTCA states an independent contractor is not an "employee" for the purpose of the GTCA, a principle described by the parties as "the independent contractor rule." Section 152(7)(a)(1) expressly states the term "employee" "does not mean a person or other legal entity while acting in the capacity of an independent contractor or an employee of an independent contractor." Additionally, versions of 51 O.S. §155Teeter v. City of Edmond, 2004 OK 585 P.3d 817Id. 2005 OK 5, §24, 85 P.3d at 824.

¶45 However, the Legislature created an exception to "the independent contractor rule" for licensed medical professionals when they are under contract with city, county, or state entities and providing medical care to inmates or detainees in the custody or control of law enforcement agencies.

¶46 Historically, licensed professionals such as accountants, architects, dentists, lawyers, and physicians were prohibited in some states from practicing their professions as a corporation. 18 O.S.2021, §§ 801

¶47 Language in 51 O.S. § 152

¶48 This observation is confirmed by application of 51 O.S.Supp.2013, §155Moran v. City of Del City, 2003 OK 5777 P.3d 58851 O.S. §155Barrios we cited 51 O.S. §15551 O.S. §152

¶49 Another reason for our construction of 51 O.S. §152

¶50 Treating licensed medical professionals as "employees" "of this state" for the purposes of the GTCA when the licensed medical professionals are within the scope of employment and "under contract," including when under contract as an independent contractor, with city, county, or state entities and providing medical care to inmates or detainees in the custody or control of law enforcement agencies is the legislative intent expressed in 51 O.S. §15251 O.S. §15251 O.S. §152

¶51 Sanders' petition alleges "employees" of Turn Key were "contracted to provide medical care to inmates." The petition identifies these employees as "medical personnel." The petition alleges that defendant failed "to provide access to medical and mental health personnel." During the trial court hearing plaintiff argued as follows.

One thing that Turn Key has never been able to prove or show is that they are a licensed medical professional. . . . the first part of it [provisions of the GTCA] [is that] [a]gain, Turn Key has never shown how they qualify as a person. Further, the Legislature still even excluded contractors and independent contractors . . . We have attached the contract that Turn Key has in Creek County that shows they are an independent contractor. . .

Attached to Plaintiff's Response to Turn Key Health Clinic, LLC's Motion to Dismiss is "Creek County, Oklahoma Contract For Medical Staffing and Administration for Creek County Criminal Justice Center." Plaintiff's Exhibit 6. The contract provides for pharmaceutical services "by a licensed qualified pharmacist." Contract, at §1.6. Turn Key must provide "proof of licenses and/or certificates for all professional staff." Id. at §1.12. The contract provides for a "Licensed Nurse on-site coverage," a "provider" ("Physician, ARNP, or PA"), a "mental health professional," and that "nursing protocols shall be devised and approved by a physician licensed in the State of Oklahoma." Contract at §§1.17, 1.22.

¶52 The contract does contain language stating Turn Key is an independent contractor. Id. at §5.1. Further, that Turn Key may "engage certain physicians as independent contractors rather than employees." Contract at §5.2. The contract does contain language to indemnify Creek County for medical malpractice tort liability. Id. at §1.6. The contract also states the laws of the State of Oklahoma govern the contract. Contract at §6.8.

¶53 We have explained that "every contract or agreement also has applicable law incorporated into the contract or agreement," including an indemnity agreement, with a result that parties could not create an indemnity agreement in order to "create a common-law negligence liability" for an injury which had an exclusive remedy by a public law statutory scheme, i.e., workers' compensation law. 

¶54 Sanders' response to the motion to dismiss and his argument during the trial court hearing did not raise any issue as an issue of fact that was not proper for consideration upon a 12 O.S. §2012and who were also not licensed as medical professionals. In other words, Sanders' petition and the Creek County Contract filed with Sanders' response to Turn Key's motion to dismiss collectively made a short and plain statement of Sanders' claim (or cause of action) consisting of simple, concise, and direct averments showing that statutory GTCA "employees" "of this state" caused the alleged wrongful acts alleged by Sanders. 

¶55 The trial court understood, and we agree, that Sanders' argument was based upon Turn Key's status as an independent contractor employing (or contracting with) licensed medical professionals for the jail, and as such the trial court ruled the alleged cause of action was subject to sovereign immunity. The trial court provided Sanders with an opportunity to amend the petition. The trial court's order was not an abuse of discretion or contrary to law.

VII. Conclusion

¶56 We conclude the interlocutory order appealed by Sanders could not be used to invoke appellate jurisdiction, and the appellate opinion by the Court of Civil Appeals must be vacated and withdrawn from publication. We conclude the petition in error may be recast into an application to assume original jurisdiction and petition for a supervisory writ of prohibition. We conclude we need not provide the parties with an opportunity to brief on the jurisdictional and recasting issues, and our recasting is proper for this controversy.

¶57 We conclude The Governmental Tort Claims Act makes licensed medical professionals to be "employees" of this state, regardless of the place in this state where duties as employees are performed, when the licensed medical professionals are under contract, including when under contract as an independent contractor, with city, county, or state entities and providing medical care to inmates or detainees in the custody or control of law enforcement agencies.

¶58 A petition for certiorari to the Court of Civil Appeals was previously granted. The opinion of the Court of Civil Appeals is vacated and withdrawn from publication. We assume original jurisdiction. Sanders' petition for a writ of prohibition is denied.

¶59 CONCUR: ROWE, C.J.; KUEHN, V.C.J.; WINCHESTER, EDMONDSON, COMBS, GURICH, DARBY, and KANE, JJ.

FOOTNOTES

In re S.J.W., 2023 OK 49535 P.3d 1235Johnson v. Snow, 2022 OK 86521 P.3d 1272Hall v. The GEO Group, Inc., 2014 OK 22324 P.3d 399

See, e.g., Stites v. DUIT Constr. Co., 1995 OK 69903 P.2d 293
Our appellate jurisdiction was invoked by a petition for certiorari previously granted herein and we address a jurisdictional issue not previously addressed by the Court of Civil Appeals. Beyrer v. The Mule, LLC, 2021 OK 45496 P.3d 983

See, e.g., A--Plus Janitorial & Carpet Cleaning v. Employers' Workers' Comp. Ass'n, 1997 OK 37936 P.2d 916

51 O.S.1981, §§15151 O.S.Supp.1984, §151Frazier, 1989 OK 73

Frazier and Brown is consistent with Kelly v. Abbott, 1989 OK 124781 P.2d 1188Kelly we noted "in Merchants Delivery Service v. Joe Esco Tire Co., [1972 OK 82497 P.2d 766Kelly, ¶9, 781 P.2d at 1190-91 (partial citation deleted and explanation added).

Dutton v. City of Midwest City, 2015 OK 51353 P.3d 532Wells v. Shriver, 1921 OK 122197 P. 460

Meadows v. Pittsburg County Bd. of County Comr's, 1995 OK 65898 P.2d 74112 O.S.Supp.1993 §696.3Rodgers v. Higgins, 1993 OK 45871 P.2d 39812 O.S. §696.1

See, e.g., Long v. McMahan, 1952 OK 35241 P.2d 185

State ex rel. Okla. Bd. of Med. Licensure & Supervision v. Pinaroc, 2002 OK 2046 P.3d 11412 O.S.Supp.2000, §990A

Willitt v. ASG Industries, 1978 OK 1572 P.2d 1296

Johnson v. Johnson, 1983 OK 117674 P.2d 539

12 O.S. §696.212 O.S. §696.3

Sanders' reliance upon the dismissal order for appellate jurisdiction presents an issue whether the "jurisdictional prerequisite" language in 12 O.S. §696.2

See, e.g., McMillian v. Holcomb, 1995 OK 117907 P.2d 1034State ex rel. Okla. Bd. of Med. Licensure and Supervision v. Pinaroc, 2002 OK 2046 P.3d 114

Assessments for Tax Year 2012 of Certain Properties Owned by Throneberry v. Wright, 2021 OK 7481 P.3d 883

Oglesby, 1992 OK 61

Stockbridge Energy, LLC v. Taylor, 2015 OK 61359 P.3d 181

Evers v. FSF Overlake Assocs., 2003 OK 5377 P.3d 581

Indep. Sch. Dist. No. 52 of Okla. Cty. v. Hofmeister, 2020 OK 56473 P.3d 475

FDIC v. Tidwell, 1991 OK 119820 P.2d 1338In re B.C., 1988 OK 4749 P.2d 542Prock v. Dist. Crt. of Pittsburg Cty, 1981 OK 41630 P.2d 772cf. Smith v. Moore, 2002 OK 4950 P.3d 215

See, e.g., Miami Business Services, LLC. v. Davis, 2013 OK 20299 P.3d 477

See, e.g., Christian v. Gray, 2003 OK 1065 P.3d 591Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), in trial courts, (2) the parties presented an issue of law reviewed de novo and on an issue of first impression, and (3) recast was procedurally proper.).

Shawareb v. SSM Health Care of Okla., Inc., 2020 OK 92480 P.3d 894

In re Guardianship of Berry, 2014 OK 56335 P.3d 779Liberty Bank and Trust Co. v. Rogalin, 1996 OK 10912 P.2d 836

Knox v. O. G. & E. Co., 2024 OK 37549 P.3d 1260de novo in an appellate proceeding).

State ex rel. Dept. of Public Welfare v. Martin, 1977 OK 186570 P.2d 623overruled on other grounds in Hershel v. Univ. Hosp. Found., 1980 OK 60610 P.2d 237White v. Wint, 1981 OK 154638 P.2d 1109

See, e.g., Powers, v. Dist. Crt. of Tulsa Cty., 2009 OK 91227 P.3d 1060

Another example of similar standards of review occurs when reviewing discovery orders. See, e.g., Farmers Ins. Co., Inc. v. Peterson, 2003 OK 9981 P.3d 659Royal Hot Shot Investments, Inc., v. Keeton, 2024 OK 70

See, e.g., James v. Rogers, 1987 OK 20734 P.2d 1298Chandler U.S.A., Inc. v. Tyree, 2004 OK 1687 P.3d 598

Progressive Direct Ins. Co. v. Pope, 2022 OK 4507 P.3d 688de novo in an appeal from the judgment."); Heffron v. Dist. Crt. Okla. Cty, 2003 OK 7577 P.3d 1069de novo. A legal question involving statutory interpretation is subject to de novo review... i.e., a non-deferential, plenary and independent review of the trial court's legal ruling) (citation omitted).

51 O.S.2021, §151

State ex rel. Okla. Depart. of Public Safety v. Gurich, 2010 OK 56238 P.3d 1

Daniel v. Daniel, 2001 OK 11742 P.3d 863Cathey v. Bd. of Cty. Com'rs for McCurtain Cty., 2023 OK 108

Galbraith v. Galbraith, 2024 OK 43550 P.3d 942Farley v. City of Claremore, 2020 OK 30465 P.3d 1213

See, e.g., State ex rel. Bd. of Regents of Univ. of Okla. v. Lucas, 2013 OK 14297 P.3d 378Gaylord Entertainment Co. v. Thompson, 1998 OK 30958 P.2d 128Stewart v. Judge of the Fifteenth Jud. Dist., 1975 OK 156542 P.2d 945

Russell v. Henderson, 1979 OK 164603 P.2d 1132

Commissioners of the Land Office of Oklahoma v. Brunson, 1935 OK 73751 P.2d 500publici juris matter and Court granted relief with the "same result" that could issue by prohibition).

Federal Deposit Ins. Corp. v. Tidwell, 1991 OK 119820 P.2d 1338

BS&B Safety Systems, LLC v. Edgerton, 2023 OK 89Moncrieff--Yeates v. Kane, 2013 OK 86323 P.3d 215Scruggs v. Edwards, 2007 OK 6154 P.3d 1257

Hines v. Clendenning, 1970 OK 28465 P.2d 460Orthopedic Clinic v. Jennings, 1971 OK 16481 P.2d 139

Sanders v. Followell, 1977 OK 143567 P.2d 84publici juris issue with a potential for repeated recurrence); Scruggs v. Edwards, 2007 OK 6154 P.3d 1257

Rocket Properties, LLC v. LaFortune, 2022 OK 5502 P.3d 1112publici juris controversy where there is an urgency and need for a judicial determination").

See, e.g., Jackson Cnty. Emergency Med. Serv. Dist. v. Kirkland, 2024 OK 4543 P.3d 1219Rocket Properties, LLC v. LaFortune, 2022 OK 5502 P.3d 1112publici juris controversy where there is an urgency and need for a judicial determination"); State ex rel. Okla. Depart. of Public Safety v. Gurich, supra, at note 32 construing 51 O.S. §155State ex rel., Okla. Depart. of Corrections v. Burris, 1995 OK 42894 P.2d 112251 O.S. §155State ex rel. Dept. of Public Welfare v. Martin, supra note 27; Hampton v. Clendinning, 1966 OK 51416 P.2d 617

See, e.g., Okla. Pub. Emps, Ass'n v. Okla. Military Dep't, 2014 OK 48330 P.3d 497cf. Assessments for Tax Year 2012 of Certain Properties Owned by Throneberry v. Wright, 2021 OK 7481 P.3d 883

Watchorn Basin Ass'n v. Oklahoma Gas & Elec. Co., 1974 OK 27525 P.2d 1357Maree v. Neuwirth, 2016 OK 62374 P.3d 750

Dutton v. City of Midwest City, 2015 OK 51353 P.3d 532publici juris when an alternative adequate remedy exists).

Cf., Westinghouse Electric Corp. v. Grand River Dam Auth., 1986 OK 20720 P.2d 713

See, e.g., Boston v. Buchanan, 2003 OK 11489 P.3d 1034Landis v. North American Co., 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (a court has power to stay proceedings and docket control to create economy of time and effort for the court, for counsel, and for litigants by an exercise of judgment weighing competing interests)).

Young v. Station 27, Inc., 2017 OK 68404 P.3d 829

Hamilton v. Northfield Ins. Co., 2020 OK 28473 P.3d 22

In re S.J.W., 2023 OK 49535 P.3d 1235

Joiner v. Brown, 1996 OK 112925 P.2d 888

Inhofe v. Wiseman, 1989 OK 41772 P.2d 389In re Guardianship of Berry, 2014 OK 56335 P.3d 779See Scruggs v. Edwards, 2007 OK 6154 P.3d 1257Kincannon v. Pugh, 1926 OK 125243 P. 945

51 O.S.Supp.2007, §15251 O.S.Supp.2024, §152

Teeter v. City of Edmond, 2004 OK 585 P.3d 817Moran v. City of Del City, 2003 OK 5777 P.3d 588

See Rocket Properties, LLC v. LaFortune, 2022 OK 5502 P.3d 1112Barrios and stating the Legislature amended the GTCA in 2014 to specify that the Act applied to tort suits alleging violations of constitutional rights).

Moran v. City of Del City, 2003 OK 5777 P.3d 58851 O.S.2021, §152.1

Moran supra at note 57; Tuffy's Inc. v. City of Oklahoma City, 2009 OK 4212 P.3d 1158Farley v. City of Claremore, supra note 34, at 2020 OK 30

51 O.S.2021, §153

51 O.S.Supp.2022, § 155

Barrios, 2018 OK 90

51 O.S.2021, §15551 O.S.Supp.1984, §155

See, e.g., Megan E. Mowrey, L. Stephen Cash, & Thomas L. Dickens, An Examination of the Business Form Decision for Professional Service Firms, 28 Seton Hall Legis. J. 355, 356-57 (2004) ("For example, certain professionals, such as accountants, architects, dentists, lawyers, and physicians, are prohibited under state law from doing business as a corporation.") (citing M. Shaun McGaughey, Limited Liability Partnerships: Need Only Professionals Apply?, 30 Creighton L. Rev. 105, 108 (1996)).

18 O.S.2021, §802

A. As used in the Professional Entity Act, unless the context clearly indicates that a different meaning is intended: 1. "Associated act" means the Oklahoma General Corporation Act, in the case of a corporation; the Uniform Limited Partnership Act of 2010, in the case of a limited partnership; or the Oklahoma Limited Liability Company Act, in the case of a limited liability company; . . .

. . . B. The definitions of the applicable associated act shall apply to the Professional Entity Act, unless the context clearly indicates that a different meaning is intended.

18 O.S.Supp.2024, §804

18 O.S.2021, §803

See, e.g., Carbajal v. Precision Builders, Inc., 2014 OK 62333 P.3d 258Page v. Hardy, 1958 OK 283334 P.2d 782

Moran, 2003 OK 57In re Baby Girl L., 2002 OK 951 P.3d 544Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State, 2003 OK 263 P.3d 535

Barrios, 2018 OK 90

Speight v. Presley, 2008 OK 99203 P.3d 173DeCorte v. Robinson, 1998 OK 87969 P.2d 358

Speight v. Presley, 2008 OK 99Nelson v. Pollay, 1996 OK 142916 P.2d 1369

Tuffy's Inc. v. City of Oklahoma City, supra at note 58, 2009 OK 4

Cf., Nelson v. Pollay, 1996 OK 142916 P.2d 136951 O.S. §155

Assessments for Tax Year 2012 of Certain Props. Owned by Throneberry v. Wright, 2021 OK 7481 P.3d 883Smicklas v. Spitz, 1992 OK 145846 P.2d 362Matter of Phillips Petroleum Co., 1982 OK 112652 P.2d 283

Knox v. O. G. & E. Co., 2024 OK 37

Moran v. City of Del City, supra at note 57, quoting 51 O.S.2021, §152.1

Spencer v. Nelson, 2024 OK 63557 P.3d 144

12 O.S. §2012Miller v. Miller, 1998 OK 24956 P.2d 887petition alleges facts upon which relief may be available." A--Plus Janitorial & Carpet Cleaning v. The Employers' Workers' Comp. Ass'n, 1997 OK 37936 P.2d 916Tulsa Indus. Auth. v. City of Tulsa, 2011 OK 57270 P.3d 113Chandler U.S.A., Inc. v. Tyree, 2004 OK 1687 P.3d 598

Colton v. Huntleigh USA Corp., 2005 OK 46121 P.3d 107012 O.S. §2012Brown v. Founders Bank and Trust Co., 1994 OK 130890 P.2d 855